Good morning, Your Honors. May it please the Court. I'm Robert Jobe, and I'm appearing today on behalf of the petitioner, Gurjeet Singh. The normal numerical and time limits that apply to motions to reopen do not apply in cases like this one, where the individual is seeking to apply or reapply for asylum based on changed circumstances arising in that person's country of nationality and is presenting material evidence that was previously unavailable. Here, the parties dispute the materiality of the evidence that Mr. Singh presented with his motion. From my perspective, the starting point here is the Board's decision. In assessing materiality, the Board can't do that in a vacuum, obviously. In assessing materiality, the Board is required to perform an individualized analysis that considers the specific elements of the moving party. But in this case, the Board just didn't do that. Instead of examining this case in the context of Mr. Singh's specific facts, it examined the case almost as, like, a hypothetical. It assessed the materiality of the evidence in the context of, quote, or seek advocates for a free state. And in another place, it described the... Well, it seems like at a high level, the BIA was saying, you know, the conditions there were not good for members of this party, and they remain not good, and so nothing really has changed. So where was the error there? Well, first, it needed to consider the specific facts of this case. The best way to do that, the way that this Court has recommended, you go back, you look at the reasons the case was initially denied. Here, Mr. Singh, when he appeared before the immigration judge, he was found credible. And not only was he found credible, he was found to have suffered past persecution. As a result, the judge agreed, as did the Board, that he was entitled to the presumptions of future persecution. But not only that, he was entitled to a presumption that internal relocation was unreasonable. That's the starting place. So when we present our evidence, the question is, well, is he presenting evidence that might move an immigration judge from that finding that the Board had rebutted that presumption against the unreasonability of relocation? And if you look at the reasons that were given the first time around, let's take a look at the Board's decision, for example, affirming the IJ. Am I understanding it right that they said that he could relocate somewhere else in the country, correct? Right. And so what evidence did you present in this go-around that suggests that he can't just relocate, that the information is material enough on that point? Well, again, Your Honor, I need to go back to the original findings because here the immigration judge did find that he could reasonably relocate, but she was very specific about her reasoning. She said that after examining the human rights reports that were in the record, she said, Sikhs from Punjab are able to freely move within India, and internal relocation to escape the attentions of the local police in their home area would not be unduly harsh. Therefore, where the fear is of the local police and the individual is not of interest to the central authorities, internal relocation is feasible. And importantly, in the IJ's decision, and this is at 1556 of the administrative record, the immigration judge said that the exception is Punjabi Sikhs who fear ill treatment by the central authorities. She said this group cannot relocate within India to avoid being targeted. So the real issue here is whether those findings have been rebutted in any way by Mr. Singh's evidence. And what he presented was that there had been a dramatic change at the center. When he had his hearing in front of the immigration judge, the Congress Party was in power. The Congress Party has long stood as the force, the primary force in India for secular nationalism. It had been replaced in 2014 in what commentators say was a landmark, a watershed decision by the BJP, a Hindu nationalist party that wishes to create a Hindu Rashtra. And so your argument is that the BJP's ascendance to power nationally has changed is a new material thing that makes his risk true throughout the country instead of just in Punjab. Without a doubt, yes. And there are many reasons for that, though. I mean, first — And so can I ask you, is your argument that the record that you showed in an attempt to get reopening, does it compel the conclusion that he already has shown that risk throughout the country or just that the error currently is the BIA didn't consider that question? It seems like the BIA didn't really look at this idea whether relocation risk had changed. And so is what we should do remand for them to look at that? Yes. They didn't perform an individualized analysis. And for that reason alone, the thing has to be vacated. It has to go back to the board. But to what extent did you ask them to do that below? Because it seems like a lot of the arguments are sort of more broad-based about just changes in kind of the political situation there. Well, I think maybe our motion assumed that the board, after seeing thousands of these cases, had more knowledge than it reflected in this decision. Because if you read the motion, it's all about the actions of the central government. It was this, you know, after the BJP took power in 2014, the first two years, it was relatively quiescent on its Hindu nationalist agenda. But then after that, especially after it was reelected in 2019, it banned Seeks for Justice. It, let me go through the chronology here, it banned Seeks for Justice in July of 2019. That was a decision made by the central government, not a state. It was the Ministry of Home Affairs. It invoked Article 3 of the UAPA, which allows the central government to ban any organization, even a peaceful one, that engages in, quote, disruptive activities, which include any action which disclaims or questions the territorial integrity of India. We'd never seen that before, and this was done at a national level. Well, it also named the legal advisor of SFJ as a terrorist, is one of the other things it did. But are you saying that the BIA didn't look at that or didn't mention that or didn't consider that? This decision, to me, it's a sleight of hand here. They, if they looked at that, they had to understand that there was no way they couldn't grant this motion. Because everything in the motion is, it's all about how the central government has been cracking down on secessionist speech, and in particular, Khalistani speech. And we'd never seen this before. Obviously, the Congress party that was in power in 2010 is no friend to the Seeks. They were in power in 1984 when thousands of Seeks perished in Delhi. But we've never seen the central government invoke these draconian measures in order to suppress the Seek desire for an independent homeland. It happened for the first time after the BJP was reelected in 2019. And then shortly thereafter, as you say, Your Honor, they unilaterally declared its leader. Just so that I understand your argument. So what you're saying is that they just didn't, they considered it, but they didn't think it was material. Is that what you're saying? They certainly didn't do a materiality analysis here. Because nowhere does the decision mention SFJ. It doesn't mention what? It doesn't mention SFJ. It makes an allusion to him joining another organization. But it doesn't mention SFJ. It doesn't mention that one of the leaders of SFJ has been declared a terrorist. It doesn't mention anything about the central government giving powers to the NIA, its national investigative agency, to investigate violations of the UAPA in the diaspora, meaning in the United States, Britain, Canada. It doesn't mention the fact that there was a dramatic increase in UAPA charges in July of 2020. But is your argument that the situation indeed has worsened so much that the BIA abuses discretion in concluding otherwise? Or is your argument that they should have focused more on the internal relocation issue? Well, obviously I think they should have focused on the relocation, and I think the evidence is so compelling that, yes, they absolutely have to grant this. But I don't think you get to make that decision. Well, I'm just trying to understand where you think the error was in the decision below. The error was the failure to conduct an individualized analysis that really took into account the relevant facts. And I'm attempting to argue those facts to show prejudice. But the relevant facts, in your view, are about the relocation issue because that's what became nationwide instead of local. Yes. Or at least your new evidence is more about nationwide versus local. Exactly. Yep. And the BIA never went back. It never considered the earlier decision. It never considered the reasoning. It never even discussed separately the issue of internal relocation. Do you want to save time for rebuttal? Yes, thank you. Maybe we should hear from the government. May it please the Court, Your Honors. Tim Remitz on behalf of the United States Attorney General. I think the question the panel seems to want an answer to is did the Board address the relocation? And I think while the pathway is not precisely clear in the Board decision, it did address that. As the panel noted, this wasn't exactly how it was presented to the Board. The motion you opened did not say we've rebutted relocation now or changed the relocation analysis. It just presented a bunch of evidence. But I think you can see from the Board's decision, particularly Petitioner's best piece of evidence for that allegation, that contradictions have changed nationwide, is tab 00040. The Board cites that specifically, and this is the evidence he presented to show a nationwide threat. So I think you see the Board in its first decision stating, or first sentence of the last paragraph, noting that here's what was presented the first time, Punjabi Sikhs were persecuted. The next sentence it says, and there's other evidence presented about India generally. And I think you presume that the Board reviews all the evidence, and at that point you have a pathway to see that the Board addressed a nationwide threat to Sikhs. And if you go into the evidence, starting with his best piece of evidence, which is 000, you see there's really not much there to show that nationwide threat. I think Petitioner focuses on a general nationalism that has arisen in India. What he hasn't submitted to the Board or the Board on the record to the Court is anything showing that materially outside of the Punjab conditions have changed. The Board notes that in Punjab Sikhs have been repressed for decades. Well, but they do indicate that PJB won the controlling majority in 2019. This is after the previous decision. They do note that there's been prosecutions of SFJ members as seditionists throughout the country. They do point out that the legal advisor of SFJ has been categorized as a terrorist. They do point out that since 2019, the government banned the FJP party for five years. They do point out all of these very specific things, talking about the widespread nature of the sort of attack on the — Did the motions reopen? Is that what you're — Yes. So when you look at the documents they're citing to support this, it's true. SFP has been banned. It designated the national leader a terrorist. But the charges that have been levied against SFP members are all for people that reside abroad. They reside in the UK. They reside in Canada. They reside in the United States because FFJ is a United States-based organization. When it comes to documentation of anyone outside of Punjab within India being arrested for expressing Sikh successionist views, there's nothing in the record besides one article about an 18-year-old that was arrested in a state outside of the Punjab for a social media post she stated about Khalistan. And she was only briefly detained for a few hours and then released after a written apology. The rest of the evidence, including the evidence related to SFP members in India, pertains to arrests in the Punjab. What about the 2020 indication by Germany accusing the NIA of spying on Sikhs? I don't — wouldn't equate spying with persecution nationwide. I think he has to show that something has materially changed outside of the Punjab. Persecution — there's been Sikhs persecuted outside of the Punjab. And that's what we don't have on this record. They have just a general rise in nationalism. You have Punjab continuing to arrest people that support Sikh separatism, including SFJ. And you have people that reside abroad that have had charges levied against them. Between those two categories of people expressing support for Sikh successionism, you don't have any documentation of individuals within India outside of the Punjab being arrested for support for Khalistan. So I thought — so at 1191, there's an article about a Delhi student protester who was subject to a manhunt and then arrested in Bihar. Is that the thing you were just talking about or something else? At 1191, there is something that I don't think — when you're saying there's only one article, I don't think that's right. The article — excuse me — the article I was referring to is on page 209 of the record. I know the article you're referring to as well is about the student Kumar or a different named student. There's a student named Kumar. Yes, there's — well, there's someone named Mital and someone named Kumar in this article. I'm not remembering which is the name that's the relevant one of who was arrested. These were not for support of Khalistan. I believe these were other successionist movements. And Kumar is a name that shows up a lot in a lot of these documentations. And it's important to note that Kumar was giving a speech where he was accused of advocating for India to be separated into many different states. And he was arrested but ultimately was released on bond and then ultimately just given academic fines. So even in a case like that for a successionist movement outside of India that does not pertain to Khalistan, there was no persecution in that case. So, I mean, we're talking about sort of global or broader developments in this country. And I imagine there's a number of petitioners like Mr. Singh here who are kind of caught in this where their petition was denied. And then they're now arguing that there's been some new changes in the political situation in India. How have those cases fared out? Because you would imagine that Mr. Singh is one of many. Well, I've reviewed some of this court's case law recently about SFP members. And I believe a recent panel, Judge Graber was on it, that's what I recall. They said you submitted one piece of one document discussing the treatment of SFP members. I think it was outside of the Punjab. And she said it wasn't arbitrary for the board to say that wasn't enough to show changed country conditions. And so here I don't think we can point to one document. We have, which I think is the best document, which is the OOO tab. And that's the Canadian government refugee board discussing statements from the SWO, which is the Sikh World Organization, another Canadian-based organization. And it asserts that outside of the Punjab and other states in India, Sikhs are now being targeted if they support successionist movements. But as the Canadian government noted, they were unable to corroborate those claims. So it's just kind of an assertion of fact. Is that 1122? Yes, 1122. And so you have an uncorroborated statement. You just have an assertion of fact. And I think the board's within its discretion. What about the fact that the party changed, though, and that the group that he's part of is now illegal, that evidence of the change in government and the change in policies nationwide, why is that not something the board needed to consider as to the risk throughout the nation now? Well, I think they're still looking at whether Sikh advocates of Palestine are nationwide persecuted. And that hasn't changed despite the BJP being the national party now. It hasn't changed despite the fact that they acknowledge he's joined this new advocacy group. There's been charges levied against people who live abroad. But, again, it comes back to where's the evidence that anyone outside of the Punjab in India has been targeted in this manner? We don't. I think Petitioner's Council is acknowledging that we shouldn't say at this point that the claim succeeds, but that we should be saying that the BIA didn't consider the right question because he was entitled to a presumption of future persecution. In the last round, that's how we finished the last round, but there was this relocation issue. He's got all this new evidence about it. You may think it's not enough, but there is new evidence about things happening throughout the country, one way or the other, at least at the political level. And there's nothing in the board's decision that makes very clear anyway that the board thought about whether that changed the relocation issue. Well, I point the court to those first two sentences of the last paragraph, which I think you see the board citing new evidence, particularly this tab, LOO, where they discuss this new change, how the SQL organization in Canada has stated that now we believe that CalSTAN advocates are persecuted nationwide. They specifically cite that document amongst many, many documents. But how much was this really positioned to the board as a relocation issue? Well, yes, I noted that as well earlier that I don't think it was teed up that way for the board. And so I think you have the board addressing their claims. What does this evidence show for this petitioner? It shows that in the Punjab arrests have continued, and that's including for SFP members, but it doesn't show outside of the Punjab people who advocate for CalSTAN have been arrested within India. Does the panel have any further questions? Thank you. Let's hear from the other side for rebuttal. The government's argument confuses me because it's undisputed that the Indian government monitors activities on behalf of Sikhs for justice as far away as Canada, Britain, and the United States. But I guess they're suggesting that although it monitors the SFJ's activities outside India, it doesn't monitor their activities outside of Punjab. That makes little sense. The record reflects that in December of 2020, the NIA, again, an arm of the SFJ. I guess let me give what I think is his argument and see if you can respond to it. What I take to be his argument is the BIA seems to be saying there is some activity outside of Punjab, but it's just not that bad, and so nothing has changed enough. I think he's saying that that's what we should read the BIA to say. So what is your response to why we shouldn't read it that way? The record indicates that there is almost no activity on behalf of SFJ in India, period. And that's because you can't advocate on behalf of SFJ without risking arrest and detention without trial. So the activities on behalf of SFJ primarily take place in the diaspora. It's undisputed that the Indian government monitors those activities. It's undisputed that they filed charges against seven people in the U.S. for their activities on behalf of SFJ. And if they're monitoring individuals' activities, our position would be this man has a reasonable fear that when he flies into Delhi, he will be arrested at the airport. There is every reason to believe that the government is tracking every single person that supports this organization. Any support for the organization is unlawful. And yet the government believes he's going to be able to just walk free out of the airport? What's the specific record evidence that you would think is most powerful for this position? Probably the evidence showing that the Indian government granted the NIA the authority to investigate SFJ activities abroad in July of 2019. And that in December of 2020, it filed charges against 16 individuals outside of India, including seven here in the United States. And then obviously since then, I don't, this is not in the record, but it's been reported throughout the world, the Justice Department filed charges indicating that the Indian government had conspired, a raw agent, Indian intelligence had conspired to assassinate Gurpatwan Singh Pandan right here in the United States. And the Canadian government expelled Indian diplomats after Hardeep Singh Najjar was murdered, according to the Indian government, according to the Canadian government, by the Indian government in Canada. The idea that the Indian government is willing to risk its international reputation to extraterritorially assassinate the leadership of this organization, but it doesn't care about Sikhs for justice in other parts of the country, it's just silly. In terms of this, if your client prevails here, is there something more unique about him, or is this a ruling that would essentially apply to anybody who's straddling these time periods? I think you're going to be seeing more of these cases because the record is, this is the earliest record. The records that will be coming your way hopefully will be far stronger than this, because the evidence at this point, it's just overwhelming. Again, it can hardly be disputed. The Indian government has murdered at least one individual in Canada, and attempted to murder an individual here, Gurpatwan Singh Pandan, an immigration lawyer who's probably appeared before this court. I'd also like to point out that it's just not true that there are no instances where people outside the Punjab but in India have been targeted. At ER 209, there was a mention of an 18-year-old who liked a Facebook post. Is that an example? Well, in addition, this whole thing began back in 2017 or 18 when the BJP complained that there were posters being put up in these various places. But on page 30 of the record in our motion, we're citing to the situation in June of 2020 when pro-Khalistan posters were spotted in the markets of Haryana's Sirsa district. Haryana is a neighboring state to Punjab. It's not Punjab. And then, in addition, on page 32 of the motion, we talk about a situation involving this Lovepreet Singh where the NIA arrested him for conducting subversive activities, pasting posters in Punjab and in New Delhi. In the following page, there's another Lovepreet Singh, same name, different guy, where the Delhi police filed charges against him. I haven't gone through this to look for every citation, but without a doubt, there is evidence in this record and in the records that you'll be seeing in the future, I guarantee you, there's overwhelming evidence at this point. Thank you. We're taking over your time. Thank you both sides for the helpful arguments. This case is submitted, and we are adjourned for the day.
judges: FRIEDLAND, BRESS, MENDOZA